UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEFFREY E. AKARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-02133-JMS-CSW |
| | ) |
| COMMISSIONER OF THE INDIANA | ) |
| DEPARTMENT OF CORRECTION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING CENTURION'S UNOPPOSED
MOTION FOR SUMMARY JUDGMENT**

Jeffrey Akard alleges that he has been deprived of medication and an accommodation for chronic injuries while incarcerated at New Castle Correctional Facility (NCCF) due to policies or practices of the prison's third-party healthcare provider, Centurion Health of Indiana, LLC. Centurion has moved for summary judgment, and Mr. Akard has not responded. For the following reasons, Centurion's summary judgment motion is **granted**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not

"scour the record" for evidence that might be relevant. *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Centurion met its burden through its unopposed motion for summary judgment. Because Mr. Akard failed to respond, facts alleged in Centurion's motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II. Facts

Centurion is a private company and has contracted to provide medical services to Indiana Department of Correction inmates since July 1, 2021. Dkt. 185-1 at ¶ 5. Mr. Akard alleges that Centurion policies have caused violations of his Eighth Amendment rights. Specifically, he alleges that he has requested prescription medication to alleviate symptoms of chronic gastroesophageal reflux disease (GERD) but has been denied and told he may purchase medications through the commissary. Dkt. 78 at 5 (screening order). Mr. Akard also alleges that he has been denied a pass that would guarantee him his assignment to a lower bunk based on chronic lower back pain and a chronic shoulder injury. *Id.* at 5–6. The Department of Veterans Affairs (VA) assigned Mr. Akard a 30% disability rating due to his chronic back and shoulder injuries. *Id.* at 5.

**A.     GERD**

Mr. Akard saw Dr. John Nwannunu on June 24, 2021, for his final medical appointment before Centurion took over his care. Dkt. 185-2 at 133–34. According to Dr. Nwannunu's notes, Mr. Akard had been experiencing heartburn for about five years, but he reported that his symptoms were relieved by antacids. *Id.* at 133. Dr. Nwannunu wrote that Mr. Akard's condition was "[s]table clinically" and that he should continue using antacids available through the commissary. *Id.* at 134.

Mr. Akard saw Nurse Practitioner Vernon Osburn in the chronic care clinic on April 12, 2022. Dkt. 185-2 at 163–65. Dr. Osburn noted that Mr. Akard's medical history reflected grade 2 esophagitis. *Id.* Nothing in the record tells what esophagitis entails or what symptoms are characteristic of a grade 2 case. Mr. Akard reported that he treated his symptoms with antacids from the commissary but had limited funds to purchase them. *Id.* at 163. If he did not take antacids, he experienced heartburn and vomiting at night. *Id.* NP Osburn informed Mr. Akard that GERD

no longer qualified for treatment through the chronic care clinic and that grade 2 esophagitis did not "meet criteria" for the "pharmacy to provide" medication. *Id.* at 164.

The record does not include any later treatment notes or requests concerning GERD.

**B.     Bottom Bunk Pass**

Centurion maintained "standard qualifications" for bottom bunk passes. Dkt. 185-4. Standard qualifications for a long-term bottom bunk pass included major joint fusion, seizure disorder, gross obesity, a gross neurological dysfunction, use of a prosthetic limb, or being age 60 or older. *Id.* Standard qualifications for a temporary bottom bunk pass included recovery from a major surgery, fractures or sprains, or a temporary illness. *Id.* There is no dispute that Mr. Akard's conditions did not meet the standard qualifications.

By Centurion policy or practice, a physician or nurse practitioner may request a bottom bunk pass for an inmate who does not meet the standard qualifications but who, in the provider's judgment, has a medical need for the pass. Dkt. 185-1 at ¶ 24. The record does not include any treatment note or request indicating that Mr. Akard asked for a bottom bunk pass after Centurion took over his care in July 2021.

### III. Analysis

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2)

4

a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

A finding of deliberate indifference requires evidence that the defendant knew of a serious risk to the plaintiff's health but disregarded it. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Deliberate indifference requires more than negligence or even objective recklessness. *Id*. The plaintiff "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id*. "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted).

The Seventh Circuit has "held that a jury can infer deliberate indifference when a treatment decision is 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Id.* (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)). The Seventh Circuit has also held that deliberate indifference occurs when the defendant:

- refuses "to take instructions from a specialist." *Petties*, 836 F.3d at 729.
- persists "in a course of treatment known to be ineffective." *Id.* at 729–30.
- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10).
- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Dean*, 18 F.4th at 241–42.

5

"[A] private corporation that has contracted to provide essential government services is subject to at least the same rules that apply to public entities," meaning it may be liable for constitutional violations caused by its policies, practices, and customs. *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). "The central question is always whether an official policy, however expressed . . . , caused the constitutional deprivation." *Id.* at 379. Put otherwise, "is the action about which the plaintiff is complaining one of the institution itself, or is it merely one undertaken by a subordinate actor?" *Id.* at 381.

Proving a *Monell* claim is a "high bar." *Dean*, 18 F.4th at 235 (internal quotation omitted). If the defendant's policy or practice "is not facially unconstitutional, the plaintiff 'must prove that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences.'" *Id.* (quoting *LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021)).

**A.   GERD**

Viewing the record in the light most favorable to Mr. Akard, a jury could reasonably find that his GERD was a serious medical condition and that he was denied prescription medication due to a Centurion policy or practice. Lacking any evidence to the contrary, a jury could interpret NP Osburn's statement that grade 2 esophagitis did not "meet criteria" for prescription medication as a statement that Centurion maintained a policy or practice of not providing prescription medication to patients with grade 2 esophagitis.

Even so, there is no basis for finding deliberate indifference. There is no basis in the record for finding that grade 2 esophagitis calls for pharmaceutical intervention. Thus, if Centurion had a policy of not providing medication for patients diagnosed with grade 2 esophagitis, it would not

be facially unconstitutional given the paucity of evidence in this record. Further, no evidence would allow a jury to reasonably conclude that Centurion's decision-makers knew that a policy or practice of not providing medication for inmates diagnosed with grade 2 esophagitis was likely to leave patients with untreated, objectively serious medical conditions presenting substantial risks of harm. *See Dean*, 18 F.4th at 235. This is particularly true given the undisputed evidence that inmates were able to purchase over-the-counter medications through the commissary and that Mr. Akard was able to control his symptoms effectively with those medications.

**B.     Bottom Bunk Pass**

Centurion maintained a written policy regarding eligibility for bottom bunk passes. There is no basis for finding, however, that the policy was facially unconstitutional or that Centurion's policymakers must have known inmates with serious needs for bottom bunk passes would fail to meet the criteria, be denied, and face substantial risks of harm. *See Dean*, 18 F.4th at 235. Indeed, the undisputed fact that physicians and nurse practitioners had discretion to issue bottom-bunk passes to inmates who did not meet the standard criteria precludes such a finding.

Regardless, there is no evidence that Mr. Akard requested or was denied a bottom bunk pass after Centurion assumed responsibility for his care. It is fundamental that an entity "cannot be liable under *Monell* when there is no underlying constitutional violation by" one of its employees. *Gaetjens v. City of Loves Park*, 4 F.4th 487, 495 (7th Cir. 2021) (internal quotation omitted). The undisputed record before the Court allows no finding of a constitutional violation by any Centurion employee with respect to denial of a bottom bunk pass.

## IV. Conclusion

Centurion's motion for summary judgment, dkt. [185], is **granted**. Claims against Centurion are **dismissed with prejudice**. The **clerk is directed** to **terminate** Centurion from the docket as a defendant. No partial final judgment will issue.

    **IT IS SO ORDERED.**

Date: 3/15/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

JEFFREY E. AKARD
199176
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

Austin Ryan Andreas
Bleeke Dillon Crandall, P.C.
austin@bleekedilloncrandall.com

Carlton Wayne Anker
Lewis and Wilkins LLP
anker@lewisandwilkins.com

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Adam Garth Forrest
BBFCS ATTORNEYS
aforrest@bbfcslaw.com

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com

Travis W. Montgomery
Bleeke Dillon Crandall, P.C.
travis@bleekedilloncrandall.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com

William Dean Young
Lewis And Wilkins LLP
young@lewisandwilkins.com