UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEFFREY E. AKARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-02133-JMS-CSW |
| ) | |
| COMMISSIONER OF THE INDIANA ) | |
| DEPARTMENT OF CORRECTION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING MARK SEVIER'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING PARTIES TO SHOW CAUSE WHY SUMMARY JUDGMENT SHOULD NOT BE GRANTED FOR MARK SEVIER UNDER FED. R. CIV. P. 56(F)(2) & (3)**

Jeffrey Akard is pursuing an Eighth Amendment claim for injunctive relief against New Castle Correctional Facility (NCCF) Warden Mark Sevier. Mr. Akard alleges that a medical condition prevents him from eating all the meals that are provided to him by the prison's food-service contractor. He is confined to his cell 21 hours per day, and he seeks permission to leave his cell outside of his designated recreation periods so he can prepare warm meals with a microwave or hot-water dispenser.

Warden Sevier seeks summary judgment based on the affirmative defense that Mr. Akard failed to exhaust available administrative remedies before filing suit and on the merits of the Eighth Amendment claim. The parties have designated evidence that Mr. Akard failed to exhaust before filing suit, but not for the reasons Warden Sevier asserts in his motion. Likewise, the parties' designations lead to the conclusion that the injunction Mr. Akard seeks would not cure a violation of his Eighth Amendment rights—but again not for the reasons Warden Sevier asserts. Therefore, the Court denies Warden Sevier's motion for summary judgment but directs Mr. Akard to show

cause pursuant to Federal Rules of Civil Procedure 56(f)(2) and (3) why Warden Sevier should not be granted summary judgment on different grounds.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a

movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II. Clarification of Claim

Mr. Akard is suing four defendants based primarily on allegations that symptoms of chronic gastroesophageal reflux disease (GERD) prevent him from eating the meals provided for him by the prison's food-service contractor. When the Court screened his complaint in November 2021, it permitted him to pursue the following claim against Warden Sevier:

> Mr. Akard does [. . .] seek injunctive relief from a GEO Group policy concerning protective custody units, alleging that it prevents him from leaving his cell to prepare meals when he is unable to eat the Aramark-provided meals. These allegations state a conditions-of-confinement claim under the Eighth Amendment. Thus, Mr. Akard's Eighth Amendment conditions-of-confinement claims for injunctive relief against Superintendent Sevier in his official capacity **shall proceed**.

Dkt. 10 at 10–11. When the Court screened Mr. Akard's amended complaint in January 2023, it affirmed that he may continue to pursue the same claim:

> Third, for the reasons explained in the Court's original Screening Order, dkt. 10, Mr. Akard's amended complaint adequately states an Eighth Amendment conditions-of-confinement claim for injunctive relief against Superintendent Sevier in his official capacity based on allegations that a GEO Group policy prevented him from leaving his cell to make GERD-friendly meals. That claim shall proceed.

Dkt. 78 at 6–7.

Therefore, the material questions regarding Mr. Akard's claims against Warden Sevier are (1) whether Mr. Akard can eat the meals provided by the food-service contractor; (2) whether he can leave his cell to prepare alternative meals; and (3) if not, whether permitting him to leave his cell to prepare alternative meals would avoid an Eighth Amendment violation. Before reaching those questions, however, the Court must resolve the affirmative defense that Mr. Akard failed to exhaust administrative remedies.

### III. Exhaustion Defense

The Prison Litigation Reform Act (PLRA) requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "Because exhaustion is an affirmative defense," Warden Sevier faces the burden of establishing that "an administrative remedy was available and that [Mr. Akard] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

A.   **The Grievance Process and Mr. Akard's Grievances**

The undisputed record shows that NCCF inmates were subject to the Indiana Department of Correction's (IDOC) grievance process, through which inmates could seek relief on a variety of matters by filing formal grievances and two levels of appeals. *See generally* dkt. 191-10. Warden Sevier contends that, although Mr. Akard has filed numerous grievances, none concern his claims in this matter. Dkt. 190 at 9–10.

In response, Mr. Akard designates two sets of grievance documents. A grievance presented in April 2022 cites his inability to eat the meals provided to him and requests exactly the relief he

seeks from Warden Sevier in this case: permission to leave his cell and prepare his own meal. Dkt. 219-1 at 11. Mr. Akard completed both levels of administrative appeals with respect to this grievance. *Id.* at 12–13. Mr. Akard also designates a grievance from 2020 seeking the return of certain property, including a mug and a water boiler that he presumably could use to prepare his own meals. *Id.* at 15–20. However, this grievance does not request the same relief at issue in his claim against Warden Sevier, and it makes no mention of his inability to eat the prison food.

Regrettably, Warden Sevier declined to file a reply in support of his summary judgment motion and address Mr. Akard's submissions.

**B.      Analysis**

Mr. Akard's 2020 grievance concerning his mug and water boiler is not evidence that he exhausted administrative remedies with respect to his later claim against Warden Sevier. "[A]n inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of the nature of the wrong for which redress is sought." *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (internal quotation omitted). The nature of the wrong at issue here is Mr. Akard's freedom to leave his cell to make his own meals due to his GERD. The 2020 grievance makes no mention of Mr. Akard's digestive troubles, his need to prepare his own meals, or his need to leave his cell (or even keep his mug and his boiler in his cell) for that purpose.

On the other hand, Mr. Akard's 2022 grievance and appeals are undisputed evidence that he exhausted administrative remedies with respect to his claim against Warden Sevier. They put the Warden on notice that Mr. Akard could not eat his prison-issued meals and sought permission to leave his cell to make his own meals.

Unfortunately for Mr. Akard, the 2022 grievance documents are undisputed evidence that he exhausted *after* he filed this lawsuit in 2021. "Section 1997e(a) says that exhaustion must

precede litigation" and requires a court to dismiss "a suit that begins too soon, even if the plaintiff exhausts his administrative remedies while the litigation is pending." *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

In short, the undisputed evidence shows that Mr. Akard failed to exhaust before filing suit—but on grounds not raised by Warden Sevier. The Court can grant summary judgment on grounds not raised by a party. *See* Fed. R. Civ. P. 56(f)(2), (3). First, though, the Court must give the parties "notice and a reasonable time to respond." *Id.* The Court provides that notice later in this order.

### IV. Merits

"[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "In order for a prison official to be liable under the Eighth Amendment, two requirements must be met. First, the . . . official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Williams v. Shah*, 927 F.3d 476, 479–80 (7th Cir. 2019). "[I]n some circumstances, the withholding of food may be sufficiently serious to satisfy the objective component of the *Farmer* test." *Id.* at 480. "To assess whether the particular withholding of food meets *Farmer*'s objective prong, a 'court must assess the amount and duration of the deprivation.'" *Id.* (quoting *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999)).

"Second, the inmate must demonstrate that the prison official had a sufficiently culpable state of mind. In a case involving prison conditions, that state of mind is deliberate indifference to inmate health or safety." *Id.* Deliberate indifference occurs when a prison official knows of an excessive risk to an inmate's health or safety but disregards it. *Id.* (quoting *Farmer*, 511 U.S. at 837). In the nutritional context, an inmate can prove deliberate indifference by showing evidence

6

that prison officials know that a dietary program is nutritionally deficient or that an inmate is receiving insufficient or nutritionally inadequate meals regardless of written policies. *Id.*

**A.     Facts**

Warden Sevier is sued in his official capacity as an employee of the GEO Group, which contracts with the IDOC to manage custodial and correctional operations at NCCF. His motion for summary judgment begins with the premise that the IDOC contracts two additional companies to provide medical and food services at of its prisons, including NCCF. As a result, Warden Sevier contends that neither he nor any other GEO official can determine what foods are served or whether an inmate is medically eligible for a specialized diet. *See* dkt. 190 at 4–5.

But the injunctive relief at issue is not a new menu or the issuance of a medically prescribed diet. Rather, Mr. Akard contends that his medical conditions keep him from eating the meals he receives as part of the standard NCCF diet. He can compensate by preparing his own meals, but he is released from his cell for only three hours per day, all in one block. He contends that his Eighth Amendment rights are violated because he is prevented from leaving his cell to heat food that is necessary to meet his basic nutritional requirements during the 21 hours that follow.

Consequently, the core of Warden Sevier's summary judgment motion is that Mr. Akard has no medical need to prepare his own food because no medical professional has determined that he needs a specialized diet. *See* dkt. 190 at 11. But the evidence leaves this point in dispute.

Warden Sevier supports his motion by citing Mr. Akard's medical records, which reflect that the prison medical staff has repeatedly counseled him to avoid certain foods—including concentrated sweets, spicy foods, simple sugars, "foods labeled as spicy," and "BBQ foods." Dkt. 191-4 at 48, 98, 150, 157, 175. Meanwhile Mr. Akard has designated eight weeks of menus that would allow a reasonable jury to infer he has been medically counseled not to eat much of the

food he receives each day. Dkt. 219 at 8–9, dkt. 219-1 at 22–29. Given the Warden's decision to forego a reply, this evidence is undisputed.

Inmates are provided three meals per day. Breakfasts typically include a cereal (*e.g.*, oatmeal or grits), another grain product (*e.g.*, bread, a biscuit, pancakes, a muffin), and occasionally sausage, eggs or potatoes. Dinner is always a sack meal featuring lunch meat (*e.g.*, turkey, ham, bologna, salami), bread, peanut butter and jelly, and a cookie.

The lunch menu especially appears to conflict with Mr. Akard's dietary counseling. Every lunch consists of a warm entrée, a vegetable, another grain product (*e.g.*, bread, rice, or a biscuit), and a piece of cake. Often—as many as five days per week—the name of the warm entrée implies that it is a spicy food Mr. Akard has been counseled to avoid: BBQ Filling, Frito Pie, Tex-Mex Taco Filling, Jambalaya, Tamale Mac and Cheese, Chorizo Hash, Southwest Burrito Filling, Spicy Rice Casserole, Chili Mac, Hearty Spanish Rice, Glazed BBQ Patty.

**B.     Analysis**

Although not responsible for generating these menus, Warden Sevier has signed them. *See* dkt. 219-1 at 22–29. Warden Sevier knows from the medical records he has designated as evidence that Mr. Akard has been medically counseled against eating spicy foods, simple sugars, and sweets. Warden Sevier also knows from the menus he has signed that a significant portion of the calories provided to Mr. Akard every week come from spicy foods, simple sugars, and sweets. And there is no dispute that Mr. Akard is confined to his cell for 21 hours every day with no ability to heat other foods. *See* dkt. 190 at 4; dkt. 219 at 3, dkt. 219-1 at 35.

A reasonable jury could find from these facts that Warden Sevier is aware of an excessive risk to Mr. Akard's health. The dispositive question—unfortunately, one the parties have not addressed—is whether Warden Sevier can eliminate or ease that risk by affording the relief

8

Mr. Akard seeks in this lawsuit. Although Warden Sevier is silent on the issue, there is no reason to believe that the dispositive question can be resolved in Mr. Akard's favor.

C.  **Alternative Grounds for Summary Judgment**

Warden Sevier is entitled to summary judgment—albeit on grounds he has not articulated. Two legal realities foreclose Mr. Akard's injunctive relief claim, which is the only claim he is pursuing against Warden Sevier.

First, "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff." 18 U.S.C. § 3626(a)(1)(A). "The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* This means the Court cannot grant the injunction Mr. Akard requests unless it is the narrowest, least intrusive solution to avoid a violation of his rights.

Second, Mr. Akard is not asking the Court to order the warden to provide him with *food*, but rather with the means to *heat* food. But precedents throughout the Seventh Circuit have long held that the Eighth Amendment does not give prisoners a right to hot meals.[1]

---

[1] *See Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) ("Similarly, the plaintiffs' complaints about cold and poorly-prepared food must fall."); *Madyun v. Thompson*, 657 F.2d 868, 874–75 (7th Cir. 1981) (Allegations regarding "food that is cold . . . are insufficient to state a claim under the Eighth Amendment even when evaluated" with other unpleasant conditions.); *Massey v. Alsip*, No. 1:13-cv-00747-JMS-TAB, 2013 WL 2474237, at *2 (S.D. Ind. June 10, 2013) ("Massey does not allege that his meals lacked sufficient nutrition. He alleges that for twenty (20) days he was not provided 'three hot meals a day.' This claim must be dismissed for failure to state a claim upon which relief can be granted."); *Walton v. Fairman*, No. 92 C 1618, 1993 WL 96427, at *5 (N.D. Ill. Apr. 1, 1993) ("[E]ven if they are served cold meals on a regular basis, this would not constitute a violation of the Eighth Amendment right to be free from cruel and unusual punishment."); *Pinkston v. Bensinger*, 359 F. Supp. 95, 99 (N.D. Ill. 1973) ("The plaintiff's allegations that he was served cold food" are "insufficient to establish a denial of constitutional rights. To establish such a violation plaintiff would have had to allege that he was denied that quality or quantity of food required for appropriate nutrition."); *cf. Aiello v. West*, 207 F. Supp. 3d 886, 901–903 (Provision of cold (rather than warm) Kosher meals did not substantially burden inmate's right to exercise religious beliefs.).

9

Any claim against Warden Sevier relies on the following tenets:

1) A substantial portion of the nourishment provided to Mr. Akard is food his doctors have advised him not to eat.

2) Because Mr. Akard cannot eat that food, he will be undernourished unless he prepares his own meals.

3) Mr. Akard can obtain foods from the commissary that meet his dietary needs, but they must be heated, and he must leave his cell to heat them.

4) For 21 consecutive hours every day, Mr. Akard cannot leave his cell to heat his own meals, and Warden Sevier refuses to grant him permission to do so.

Mr. Akard's claim falls apart at the third step.

Under § 3626(a)(1)(A), the Court can only issue injunctive relief that "extends no further than necessary to correct the violation" of a constitutional right. The denial of hot meals is not itself a constitutional violation. Therefore, the Court can only issue an injunction requiring Warden Sevier to allow Mr. Akard to leave his cell to heat his meals if the only commissary foods that meet his dietary needs must be heated. If Mr. Akard can meet his dietary needs by eating foods that do not need to be heated, the injunction he requests would not correct a constitutional violation.

Mr. Akard has not presented any evidence about the foods he can obtain through the commissary to meet his dietary needs. By extension, he has not furnished a basis for finding that the only commissary foods he can eat must be heated. Absent such evidence, no evidence would allow a trier of fact to find a constitutional violation, and the injunction he seeks reaches farther than the PLRA allows.

### V. Conclusion and Order to Show Cause

Warden Sevier's motion for summary judgment, dkt. [189], is **denied**. Mr. Akard will have **through April 15, 2024**, to **show cause** why the Court should not grant Warden Sevier summary judgment and dismiss the claims against him because:

1) Mr. Akard exhausted available administrative remedies, if at all, *after* he filed this lawsuit. *See* Part III(B) above.

2) Alternatively, the injunctive relief Mr. Akard seeks through his claim against Warden Sevier would not correct the violation of a constitutional right. *See* Part IV(C) above.

The Warden will have **fourteen days** from the filing of Mr. Akard's response to file any reply.

**These deadlines will not be extended.**

The Court closes by emphasizing that this additional proceeding would not be necessary had Warden Sevier simply filed a reply addressing Mr. Akard's submissions. An attorney's job includes responding to opposing litigants' filings, even when they are not ultimately meritorious. Attorneys who practice in the Seventh Circuit accept an obligation to "be considerate of the time constraints and pressures on the court and court staff inherent in their efforts to administer justice." *Standards for Prof'l Conduct Within the Seventh Fed. Judicial Cir.*, https://www.ca7.uscourts.gov/forms/seventh_circuit_standards_for_professional_conduct.pdf. Filing an opening brief and then leaving the Court to sort out any disputes does not honor this obligation.

This approach by defense counsel is particularly galling as it relates to the exhaustion defense. The Warden joined the Commissioner of the IDOC in asserting the defense when he answered Mr. Akard's original complaint in January 2022. Dkts. 26, 27. Both withdrew the defense shortly thereafter. Dkts. 31, 34. When Mr. Akard amended his complaint nearly a year later, the Warden reasserted the exhaustion defense and explained that he had "obtained the evidence believed necessary to establish that" Mr. Akard failed to exhaust, even though the claims against him did not change after Mr. Akard amended. Dkt. 95. Despite seeking and obtaining leave to reassert and pursue the defense so late in the case, the Warden declined to fully address the

11

substance of the issue. This strategy did not, in this instance, result in the failure of the defense, but it has inarguably prolonged and multiplied these proceedings.[2]

   **IT IS SO ORDERED.**

Date: 3/15/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

JEFFREY E. AKARD
199176
NEW CASTLE – CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

Austin Ryan Andreas
Bleeke Dillon Crandall, P.C.
austin@bleekedilloncrandall.com

Carlton Wayne Anker
Lewis and Wilkins LLP
anker@lewisandwilkins.com

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

---

[2] In considering any reply to Mr. Akard's show-cause response, the Warden should consider that cases dismissed for failure to exhaust are dismissed *without* prejudice. Ford v. Johnson, 362 F.3d 395, 401(7th Cir. 2004). Mr. Akard appears to have exhausted his claim against the Warden in 2022. Thus, if the claim is resolved on the exhaustion issue alone, Mr. Akard may simply reassert his claims in a new action.

Adam Garth Forrest
BBFCS ATTORNEYS
aforrest@bbfcslaw.com

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com

Travis W. Montgomery
Bleeke Dillon Crandall, P.C.
travis@bleekedilloncrandall.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com

William Dean Young
Lewis And Wilkins LLP
young@lewisandwilkins.com