UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JEFFREY E. AKARD,                              )
                                               )
                        Plaintiff,             )
                                               )
              v.                               )        No. 1:21-cv-02133-JMS-CSW
                                               )
COMMISSIONER OF THE INDIANA                    )
DEPARTMENT OF CORRECTION,                      )
MARK SEVIER Superintendant,                    )
                                               )
                        Defendants.            )

**ORDER DENYING MOTION TO RECONSIDER**

The Court granted Centurion Health of Indiana, LLC, summary judgment on

Jeffrey Akard's claims that Centurion policies or practices caused violations of his

Eighth Amendment rights. Dkt. 232. Specifically, Mr. Akard contended that Centurion physicians

denied his requests for prescription medication to alleviate symptoms of gastroesophageal reflux

disease (GERD) and a pass that would allow him permanent assignment to a bottom bunk due to

chronic back and shoulder injuries. Mr. Akard now asks the Court to reconsider its ruling, asserting

both that the Court erred in its ruling and that the Court reached its decision without the benefit of

his response brief, which he alleges he sent but was never received and filed. For the following

reasons, Mr. Akard's motion to reconsider the Court's ruling is denied.

**I. Legal Standard**

Mr. Akard cites Federal Rule of Civil Procedure 59(e) as the basis for his motion, *see*

dkt. 237, but motions to reconsider orders other than final judgments are governed by Rule 54(b).

*See Selective Ins. Co. of S.C. v. City of Paris*, 769 F.3d 501, 507 (7th Cir. 2014). "Federal Rule of

Civil Procedure 54(b) provides that non-final orders 'may be revised at any time before the entry

of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) (quoting Rule 54(b)).

"Motions to reconsider serve a limited function, to be used 'where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Davis v. Carmel Clay Schs.*, 286 F.R.D. 411, 412 (S.D. Ind. 2012) (quoting *Bank of Waunakee v. Rochester Cheese Sales*, 906 F.2d 1185, 1191 (7th Cir. 1990)) (additional quotations omitted). A court may grant a motion to reconsider where a movant demonstrates a manifest error of law or fact; however, a motion to reconsider is not an occasion to make new arguments. *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *Granite St. Ins. v. Degerlia*, 925 F.2d 189, 192 n.7 (7th Cir. 1991). A motion to reconsider under Rule 54(b) may also be appropriate where there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee*, 906 F.2d at 1191 (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). In other words, "Motions to reconsider 'are not replays of the main event.'" *Dominguez v. Lynch*, 612 F. App'x 388, 390 (7th Cir. 2015) (quoting *Khan v. Holder*, 766 F.3d 689, 696 (7th Cir. 2014)). A motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269–70 (7th Cir. 1996).

## II. Consideration of Summary Judgment Response Brief

Mr. Akard has presented considerable evidence that he timely submitted his summary judgment response brief to the appropriate officials at New Castle Correctional Facility to be mailed to this Court. *See* dkts. 237-1, 237-2, 237-3. Accordingly, that brief is part of the record for the motion to reconsider.

The brief now comes before the Court with Mr. Akard's motion to reconsider the Court's order granting Centurion summary judgment. The Court has not undertaken a *de novo* review of Centurion's summary judgment motion. Rather, the questions before the Court are whether the Court committed a manifest error in view of all the evidence and legal arguments now before it. Therefore, the Court has reviewed and considered Mr. Akard's summary judgment brief only to the extent he has cited it in his motion to reconsider. *See Jeffers v. Comm'r of Internal Revenue*, 992 F.3d 649, 653 (7th Cir. 2021) ("We will not scour the record in an attempt to formulate a cogent argument when Jeffers has presented none."); *United States v. Dunkel*, 927 F.2d 95, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

### III. GERD Claims

At summary judgment, the Court noted evidence that Mr. Akard's GERD symptoms were stable and controlled by antacids when Centurion took over his care in July 2021 and that he had only one documented medical appointment after coming under Centurion's care:

> Mr. Akard saw Dr. John Nwannunu on June 24, 2021, for his final medical appointment before Centurion took over his care. Dkt. 185-2 at 133–34. According to Dr. Nwannunu's notes, Mr. Akard had been experiencing heartburn for about five years, but he reported that his symptoms were relieved by antacids. Id. at 133. Dr. Nwannunu wrote that Mr. Akard's condition was "[s]table clinically" and that he should continue using antacids available through the commissary. *Id.* at 134.

> Mr. Akard saw Nurse Practitioner Vernon Osburn in the chronic care clinic on April 12, 2022. Dkt. 185-2 at 163–65. Dr. Osburn noted that Mr. Akard's medical history reflected grade 2 esophagitis. *Id.* Nothing in the record tells what esophagitis entails or what symptoms are characteristic of a grade 2 case. Mr. Akard reported that he treated his symptoms with antacids from the commissary but had limited funds to purchase them. *Id.* at 163. If he did not take antacids, he experienced heartburn and vomiting at night. *Id.* NP Osburn informed Mr. Akard that GERD no longer qualified for treatment through the chronic care clinic and that grade 2 esophagitis did not "meet criteria" for the "pharmacy to provide" medication. *Id.* at 164.

Dkt. 232 at 3–4. Based on those facts, the Court determined there was no basis for finding that a Centurion policy or practice caused an Eighth Amendment violation:

> There is no basis in the record for finding that grade 2 esophagitis calls for pharmaceutical intervention. Thus, if Centurion had a policy of not providing medication for patients diagnosed with grade 2 esophagitis, it would not [be] facially unconstitutional given the paucity of evidence in this record. Further, no evidence would allow a jury to reasonably conclude that Centurion's decision-makers knew that a policy or practice of not providing medication for inmates diagnosed with grade 2 esophagitis was likely to leave patients with untreated, objectively serious medical conditions presenting substantial risks of harm. *See Dean*, 18 F.4th at 235. This is particularly true given the undisputed evidence that inmates were able to purchase over-the-counter medications through the commissary and that Mr. Akard was able to control his symptoms effectively with those medications.

*Id.* at 6–7.

In his motion to reconsider, Mr. Akard argues principally Dr. Nwannunu's notes from the June 2021 appointment do not accurately reflect his condition at that time. Dkt. 237 at 5–6. But any dispute about that fact is immaterial. The appointment took place before Centurion took over Mr. Akard's care. Dkt. 2. Although the Court cited that record as evidence of Mr. Akard's condition *when* Centurion took over, *see* dkt. 232 at 3, the Court did not cite it as evidence of the propriety of Centurion's policies or practices or of the conduct of any Centurion employee, *see id.* at 6–7.

Mr. Akard also argues that an affidavit submitted by Health Services Administrator Christopher Farr in support of Centurion's summary judgment motion carries no weight because Mr. Farr is not a doctor. Dkt. 237 at 6. But the Court cited Mr. Farr's affidavit only as evidence of when Centurion took over Mr. Akard's care, *see* dkt. 232 at 3, and as evidence that Centurion's policies or practices regarding bottom bunk passes allow medical professionals to request passes for individuals who do not meet the standard qualifications, *see id.* at 4. Mr. Akard does not challenge Mr. Farr's competency to testify to those facts or the admissibility or truthfulness of that testimony. Thus, any dispute about Mr. Akard's qualifications is immaterial.

Mr. Akard comes closest to asserting a manifest error in this Court's ruling by arguing that Dr. Osburn displayed deliberate indifference by failing to adopt earlier findings of a specialist,

prescribing ineffective medications, leaving him to buy other medications from the commissary, and failing to order diagnostic testing. Dkt. 237 at 7–8. But the Court granted summary judgment because the record did not show that Centurion maintained a facially unconstitutional policy or practice regarding GERD treatment and because "no evidence would allow a jury to reasonably conclude that Centurion's decision-makers knew that a policy or practice of not providing medication for inmates" with Mr. Akard's condition "was likely to leave patients with untreated, objectively serious medical conditions presenting substantial risks of harm," particularly because "inmates were able to purchase over-the-counter medications through the commissary." Dkt. 232 at 6–7. Mr. Akard's criticisms of Dr. Osburn's treatment decisions do not demonstrate that the Court's findings with respect to Centurion's policies and practices were manifestly erroneous.

Finally, Mr. Akard argues that Centurion violated his rights by leaving him to "buy his own GERD medications" from the commissary. Dkt. 237 at 7. But it is "well established" that "the Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care." *Poole v. Isaacs*, 703 F.3d 1024, 1026–27 (7th Cir. 2012).[1] Centurion could have violated the Constitution by terminating its provision of prescription GERD medications if it failed to ensure that suitable medications were available through the commissary or that inmates without funds to purchase medications from the commissary could obtain suitable medications by different means. But Mr. Akard has not provided

---

[1] *See also Jones-Bey v. Cohn*, 115 F. Supp. 2d 936, 940 (N.D. Ind. 2000) ("'Co-pay policies under which inmates must bear the cost of their treatment are Constitutionally permissible if they do not interfere with timely and effective treatment of serious medical needs."); *Martin v. DeBruyn*, 880 F. Supp. 610, 615 (N.D. Ind. 1995) (The Eighth Amendment "does not forbid a state from requiring that an inmate pay for his medical treatment to the extent he is able to do so, as he would have to do were he not deprived of his liberty. The Eighth Amendment guarantees only that states will not ignore an inmate's serious medical needs; it does not guarantee free medical care.").

any evidence that these circumstances apply in this case. Accordingly, there is no basis to reconsider summary judgment on Mr. Akard's GERD claims.

### IV. Bottom Bunk Claims

The Court found that Centurion maintained standard criteria for inmates to receive bottom bunk passes. Dkt. 232 at 4. Although Mr. Akard contends that the denial of a bottom bunk pass violates his Eighth Amendment rights, he does not contend that he meets any of the standard criteria. The Court also noted that Centurion policy or practice allowed a doctor to request a bottom bunk pass for an inmate who did not meet the standard criteria, but the record did "not include any treatment note or request indicating that Mr. Akard asked for a bottom bunk pass after Centurion took over his care in July 2021." *Id.*

> Based on these facts, the Court found:
>
> Centurion maintained a written policy regarding eligibility for bottom bunk passes. There is no basis for finding, however, that the policy was facially unconstitutional or that Centurion's policymakers must have known inmates with serious needs for bottom bunk passes would fail to meet the criteria, be denied, and face substantial risks of harm. *See Dean*, 18 F.4th at 235. Indeed, the undisputed fact that physicians and nurse practitioners had discretion to issue bottom-bunk passes to inmates who did not meet the standard criteria precludes such a finding.
>
> Regardless, there is no evidence that Mr. Akard requested or was denied a bottom bunk pass after Centurion assumed responsibility for his care. It is fundamental that an entity "cannot be liable under *Monell* when there is no underlying constitutional violation by" one of its employees. *Gaetjens v. City of Loves Park*, 4 F.4th 487, 495 (7th Cir. 2021) (internal quotation omitted). The undisputed record before the Court allows no finding of a constitutional violation by any Centurion employee with respect to denial of a bottom bunk pass.

Dkt. 232 at 7.

In his motion to reconsider, Mr. Akard contests the latter finding. He states that, when he met with a Centurion doctor in August 2021, he "had his medical folder" to show that he previously received a bottom bunk pass at a different prison. Dkt. 237 at 6–7. Therefore, he argues, "Centurion was notified on 08/25/2021 of Akard's . . . request for Bottom Bunk Pass." *Id.* at 8. Medical records

from that appointment show that Mr. Akard discussed his disability classification and chronic conditions with Licensed Practical Nurse Larry Holmes but do not specify that they discussed a bottom bunk pass. *See* dkt. 237-6.

Mr. Akard has identified a reason for questioning the Court's finding that he never sought a bottom bunk pass after entering Centurion's care, but he has not demonstrated that the Court's grant of summary judgment was manifestly erroneous. Mr. Akard does not challenge the Court's findings that Centurion's policy or practice left doctors discretion to issue passes to inmates who did not meet the standard criteria. He does not challenge the Court's findings that Centurion's policy was not facially unconstitutional and that it had no reason to believe—in light of the discretion left to doctors—that inmates who did not automatically qualify for bottom bunk passes would face substantial risks of harm. *See* dkt. 232 at 7. As a result, Mr. Akard has not presented grounds for granting reconsideration of Centurion's award of summary judgment.

## V. Conclusion

Mr. Akard's motion to reconsider, dkt. [237], is **denied**.

**IT IS SO ORDERED.**

Date: 5/2/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

JEFFREY E. AKARD
199176
NEW CASTLE – CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

Austin Ryan Andreas
Bleeke Dillon Crandall, P.C.
austin@bleekedilloncrandall.com

Carlton Wayne Anker
Lewis and Wilkins LLP
anker@lewisandwilkins.com

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Adam Garth Forrest
BBFCS ATTORNEYS
aforrest@bbfcslaw.com

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com

Travis W. Montgomery
Bleeke Dillon Crandall, P.C.
travis@bleekedilloncrandall.com

Caitlin S. Schroeder
Ogletree Deakins
caitlin.schroeder@ogletree.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com

William Dean Young
Lewis And Wilkins LLP
young@lewisandwilkins.com